**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| RADIANCE CAPITAL RECEIVABLES TWELVE, LLC, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CIV. ACT. NO. **1:13-cv-238-TFM-C** |
| | ) |
| JOHN F. CAMPBELL, | ) ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Plaintiff's Motion for Sanctions (Doc. 65, filed 6/29/23) which was stayed until the bankruptcy court lifted the stay. Plaintiff Radiance Capital Receivables Twelve, LLC's ("Plaintiff" or "Radiance") seeks a finding of contempt and sanctions for a violation of the charging order. After the stay was lifted, Defendant John F. Campbell ("Defendant" or "Campbell") filed his response and Plaintiff filed its reply. Docs. 102, 104. The Court held a show cause hearing on March 25, 2026. The Court orally granted the motion at the hearing and indicated a written opinion would follow. This is that opinion.

The motion for sanctions (Doc. 65) is **GRANTED** and sanctions are imposed herein. The Court also **DENIES as moot** the motion to strike (Doc. 109) and the motion for leave to file an objection to the proposed order (Docs. 115, 116) are **GRANTED in part** and **DENIED in part**.

## I.    BACKGROUND

On April 23, 2013, SE Property Holdings, LLC ("SEPH"), successor by merger with Vision Bank, filed a complaint seeking repayment of a $305,000.00 loan to Campbell which was in default for non-payment. *See* Doc. 1. On September 9, 2013, this Court entered summary judgment in favor of SEPH and against Campbell in the total amount of $317,135.00. Doc. 19. Campbell did

Page 1 of 13

not satisfy the judgment and SEPH requested Charging Orders against numerous companies in which Campbell had an interest.  Docs. 22, 37.  On October 21, 2013, and again on January 21, 2014, this Court entered charging orders (the "Charging Orders"), granting SEPH liens on Campbell's interest in numerous limited liability companies (collectively, the "charged entities").  Docs. 23, 40.

> The Charging Orders contained identical language that required of Campbell as follows:

> ORDERED that a lien is charged against the financial interests of John F. Campbell in the Companies in the amount of $317,135.00, being the final judgment of September 9, 2013, rendered in favor of Plaintiff and against John F. Campbell, plus accrued interest and costs, and that said Companies are Ordered to distribute to the Plaintiff any income, officer's fees, bonuses, distributions, salaries or dividends paid or otherwise conveyed to John F. Campbell by reason of any interest he owns in the Companies until Plaintiff's judgment is satisfied in full.

*Id*.  On December 20, 2018, SEPH assigned the judgment to Radiance, and on November 20, 2020, Radiance replaced SEPH as plaintiff in this matter as the successor in interest.  Doc. 47.  Other than the substitution of parties in November of 2020, the docket reflects no collection activity undertaken by Radiance until early December of 2022 when it commenced issuing garnishments on Campbell and subpoenas to various financial institutions.  On June 26, 2023, Radiance filed the instant motion for sanctions against Campbell for violating the Charging Orders, alleging Campbell made distributions from charged entities to himself and third parties in contravention of the Charging Orders.  Doc. 65.  This Court set an initial hearing date of July 31, 2023, which the Court continued at the request of Campell to retain counsel.  Doc. 76.  On August 11, 2023, Campbell filed a Chapter 7 Bankruptcy Petition in the United States Bankruptcy Court for the Southern District of New York, case number 23-35668.  Doc. 82.  Pursuant to the automatic stay of 11 U.S.C. § 362(a), this Court necessarily stayed all further proceedings, including Radiance's motion for sanctions.  Doc. 91.

On March 5, 2024, Radiance filed an adversary proceeding in the United States Bankruptcy Court for the Southern District of New York styled *Radiance Capital Receivables Twelve LLC v. John F. Campbell*, Adversary Proceeding No. 24-09009 (the "Adversary Proceeding"), objecting to discharge of Campbell's liability related to the distributions from the charged entities. Doc.112-2. In the Adversary Proceeding, the parties filed competing summary judgments, supported by affidavits, deposition testimony and financial documents, and responses and replies to the dueling motions, all of which have been filed of record with this Court. On January 12, 2026, the Bankruptcy Court entered its Memorandum Decision and Order denying Radiance's summary judgment request for non-discharge of its debt based upon fraudulent conveyances pursuant to 11 U.S.C. § 523(a)(2), but finding that Campbell "knowingly violated the Charging Orders" resulting in a "willful and malicious injury" to Radiance within the meaning of 11 U.S.C. § 523(a)(6). Doc. 100-1. As part of the briefing on the motions, Campbell raised arguments in support of his summary judgment motion and defenses in response to Radiance's summary judgment motion, summarized generally as 1) a prior IRS lien prevented his compliance with the Charging Orders, 2) that Radiance waived enforcement of the Charging Order violations, 3) that the Charging Orders could not apply to certain charged entities and 4) a claim that some distributions received by Campbell were actually compensation paid to him by the charged entities. Each of these issues was thoroughly briefed and litigated by the parties and in its ruling the Bankruptcy Court held each defense to be either irrelevant or "utterly meritless" in reaching its decision that Campbell violated the Charging Orders. In its decision, the Bankruptcy Court abstained from determining what the amount and scope of a sanction should be against Campbell for his willful violation of the Charging Orders and *sue sponta* modified the automatic stay of 11 U.S.C. § 362(a) to permit Radiance to

continue to prosecute before this Court its motion for sanctions filed in June of 2023 for a determination as to the appropriate sanction.

On January 12, 2026, Radiance notified the Court that the stay had been lifted to proceed with the contempt motion. Doc. 100. This Court set response and reply deadlines for the parties, and on March 9, 2026, Campbell filed his response with extensive documentation in support, later filing additional documents in support of his positions. Docs. 102, 111, 112. Radiance filed its reply on March 16, 2026. Doc.104. On March 25, 2026, this Court held its show cause hearing. The corporate representative of Radiance attended virtually while everyone else attended in person. Campbell proceeded *pro se* in this proceeding though he did have counsel in the bankruptcy proceeding in the Southern District of New York.

## II.    LAW GENERALLY

"[C]ivil contempt proceeding[s are] brought to enforce a court order that requires [a party] to act in some defined manner." *Chairs v. Burgess*, 143 F.3d 1432, 1436 (11th Cir. 1998) (quoting *Mercer v. Mitchell*, 908 F.2d 763, 768 (11th Cir. 1990)). "A finding of civil contempt — willful disregard of the authority of the court — must be supported by clear and convincing evidence." *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1296 (11th Cir. 2002) (citing *McGregor v. Chierico*, 206 F.3d 1378, 1383 (11th Cir. 2000)). "The clear and convincing evidence must establish that: (1) the allegedly violated order was valid and lawful; (2) the order was clear and unambiguous; and (3) the alleged violator had the ability to comply with the order." *Id*. (citations omitted). In *Turner v. Rogers*, 564 U.S. 431 (2011), the Court recognized that civil contempt differs from criminal contempt "in that it seeks only to coerce the defendant to do what the court has previously ordered him to do." *Id*. at 441 (citation omitted). In other words, a civil contempt defendant

"carries the keys of his prison in his own pocket," because he is purged of contempt once he complies with the underlying order. *Id*.

If a party is found to be in civil contempt of court, the Court has the power to impose coercive and compensatory sanctions. *See Citronelle-Mobile Gathering, Inc. v. Watkins*, 943 F.2d 1297, 1301 (11th Cir. 1991) (citation omitted). "The measure of the court's power in civil contempt proceedings is determined by the requirements of full remedial relief. This may entail the doing of a variety of acts. . . ." *EEOC v. Guardian Pools, Inc.*, 828 F.2d 1507, 1515 (11th Cir. 1987) (quoting *United States v. United Mine Workers*, 330 U.S. 258, 304 (1947)). "When fashioning a sanction to secure compliance, a district court should consider 'the character and magnitude of the harm threatened by continued contumacy and the probable effectiveness of any suggested sanction in bringing about the result desired.'" *Citronelle-Mobile*, 943 F.2d at 1304 (quoting *EEOC*, 828 F.2d at 1515). Sanctions may be imposed to coerce the contemnor to comply with the court's order but may not be so excessive as to be punitive in nature. *Matter of Trinity Industries, Inc.*, 876 F.2d 1485, 1493 (11th Cir. 1989).

### III.    FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court finds the following by clear and convincing evidence.

1.      Charging Orders were properly entered against Campbell by this Court on October 21, 2013, and renewed on January 21, 2014. Campbell did not object after the motions requesting the Charging Orders were filed or after entry of the Charging Orders, whether by counsel or otherwise.

2.      Campbell and the charged entities received notice of the Charging Orders and Campbell has not asserted that notice was lacking or in any way deficient.

3.      From the date of entry of the Charging Orders up to December of 2022, Campbell

violated the Charging Orders by taking distributions from the charged entities directly for his benefit or by paying such to third parties without any business justification for the transfers. These transfers greatly exceeded the amount of Radiance's judgment.

4.      In the Adversary Proceeding, the Bankruptcy Court clearly held that Campbell violated the Charging Orders, deferring only an adjudication as to the amount or type of sanction for this Court to determine. This Court take judicial notice of the bankruptcy court's findings and agrees that Campbell willfully violated the Charging Orders when he took distributions from the charged entities for his direct or indirect benefit and failed to pay such to Radiance as so ordered.

5.      Campbell admitted to violating the Charging Orders in his Response to this Court and in open court at his contempt hearing. *See* Doc. 104.

6.      Based on the testimony at the hearing, argument by the parties, the pleadings, documents, and other evidence submitted with the pleadings that the parties have filed, the Court finds that Campbell is in contempt of this Court's orders of October 21, 2013, and January 21, 2014.[1]

7.      This Court further finds that the defenses Campbell asserts again in this proceeding were previously presented and argued to the Bankruptcy Court by Campbell and the Bankruptcy Court made adverse findings on each issue. In the Eleventh Circuit, a bankruptcy court ruling can have *res judicata* effect in a subsequent district court proceeding when four elements are satisfied: (1) the prior judgment was made by a court of competent jurisdiction, (2) the judgment was final and on the merits, (3) both cases involve the same parties or their privies, and (4) both cases involve the same causes of action. *Hart v. Yamaha-Parts Distributors, Inc.*, 787 F.2d 1468, 1470 (11th Cir.

---

[1] Plaintiff timely filed a motion to revive judgment, which the Court granted. *See* Docs. 63, 99. Thus, the Court's orders are still in effect despite the passing of ten years.

1986). *Res judicata* "extends not only to the precise legal theory presented in the previous litigation, but to all legal theories and claims arising out of the same 'operative nucleus of fact.'" *Id*. at 1470-71 (citing *Olmstead v. Amoco Oil Co.,* 725 F.2d 627, 632 (11th Cir.1984)).

Issue preclusion, or collateral estoppel, requires four elements to be satisfied before a party can be precluded from relitigating an issue that was previously decided: (1) the issue at stake must be identical to the one involved in the prior proceeding, (2) the issue must have been actually litigated in the prior proceeding, (3) the prior determination of the issue must have been a critical and necessary part of the earlier decision, and (4) the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in the prior proceeding. *B & B Hardware, Inc. v. Hargis Industries, Inc.*, 575 U.S. 138, 148 (2015). "The determination of a question directly involved in one action is conclusive as to that question in a second suit." *Id*. at 147.

The Bankruptcy Court was a court of competent jurisdiction, the parties in the Adversary Proceeding are identical to the parties now before this Court, the causes of action are inherently the same, the ruling was a final judgment on the merits, and no matters remain for decision before the Bankruptcy Court as it relates to this particular issue. Each issue that Campbell now raises in his defense were raised by him in the Adversary Proceeding, Campbell's defenses raised there, and now here, are identical, and the Adversary Proceedings pleadings provided by the parties in support or against this instant motion reflect that Campbell was given a full and fair opportunity to litigate the issues in the prior proceeding. Accordingly, Campbell's prior defenses, now raised once again before this Court, are barred by the various preclusion doctrines and not subject to re-litigation in this proceeding. However, even if they were not, for the same reasons identified by the Bankruptcy Court, this Court would reject those defenses.

8.      The information in Defendant's financial affidavit is largely irrelevant, as the bankruptcy court already thoroughly reviewed Defendant's finances and the Court takes judicial notice of the bankruptcy court's findings regarding Defendant's financial status.  However, even considering the financial affidavit, the outcome is the same.  Plaintiff's motion to strike the unsworn financial affidavit (Doc. 109) is due to be denied as moot because Defendant filed a new financial affidavit in response (Doc. 111), which was properly sworn.

9.      Defendant had ample opportunity to be heard and present evidence during the hearing on March 26, 2026.  Accordingly, the motion for leave to file objection and supplement (Docs. 115, 116) are due to be denied.  Campbell could have presented these matters at the hearing but did not for whatever reason.  The hearing is not ongoing and the evidence at this point is closed.

10.     The clear and convincing evidence establish that: (1) the Charging Orders violated were valid and lawful; (2) the orders were clear and unambiguous; and (3) Campbell had the ability to comply with the orders.

11.     All of the necessary findings regarding Defendant's financial status, improper distributions, and violations of the charging orders have already been made by the bankruptcy court.  The only thing that remains for this Court to decide is whether sanctions are appropriate, which the Court finds they are, and the scope of those sanctions.

### IV.     SANCTIONS

Having determined that Campbell is in contempt of court, the Court now determines what sanctions are appropriate, keeping in mind that this Court has broad discretion in fashioning sanctions, "measured solely by the 'requirements of full remedial relief.'" *United States v. City of Miami*, 195 F.3d 1292, 1298 (11th Cir. 1999) (quoting *Citronelle–Mobile Gathering*, 943 F.2d at 1304.  Sanctions in civil contempt proceedings "may be imposed for either or both of two distinct

purposes, to coerce compliance with a court order, and to compensate the complainant for actual losses sustained by him as the result of the defendants' contumacy. … If the fine is compensatory, it is payable to the complainant and must be based on proof of the complainant's actual loss." *In re Chase & Sanborn Corp.*, 872 F.2d 397, 400–01 (11th Cir. 1989) (internal citations omitted). A district court has numerous options to coerce the contemnor to comply with a court order, "among them: a coercive daily fine, a compensatory fine, attorney's fees and expenses …, and coercive incarceration." *Citronelle-Mobile Gathering*, 943 F.3d at 1304.

In this case, Radiance has been damaged in the amounts of what Campbell should have paid to Radiance had Campbell obeyed the Charging Orders. Radiance has submitted evidence that the amounts Campbell has distributed to himself or third parties is no less than approximately $725,995.45. Doc. 110. However, Radiance has stipulated, and this Court agrees, that the amount is capped by the Charging Orders at the existing judgment balance and post-judgment interest thereon. As no amounts have been paid towards the Charging Order liens by Campbell, or by any other means, the compensatory fine Campbell is liable for is $317,135.00, and the accrued interest thereon, which as of April 24, 2026, is $5,993.00, and such additional interest as will accrue at a per diem of $1.30[2] until Campbell purges himself of contempt. The Court finds that Campbell must purge himself of contempt by payment to Radiance the amount of $323,128.00, and such additional interest that may accrue until the date he purges himself of contempt.

The Court also finds that an award to Radiance may be appropriate as to necessary

---

[2] 28 U.S.C. § 1961 governs civil judgment interest on federal judgments, calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding. The post-judgment interest rate for Radiance's judgment is thus 0.11%. The per diem is $1.30 ($317,135.00 x 0.11/365). From the date of the judgment to the hearing date (9/9/2013 to 3/25/2026=4,580 days) the accrued interest was $5,954.00.

attorney's fees and costs it has incurred in this matter, commencing from the date Radiance discovered the Charging Order violations.  In support of this fee award, Radiance is instructed to file a fee petition and affidavit within seven (7) days of entry of this Memorandum Opinion and Order.  Additionally, Radiance is instructed to address whether it is for this Court or the Bankruptcy Court to determine whether and what amount of fees and costs may be appropriate.  More details on the interplay between the bankruptcy proceedings and this proceeding are discussed in the next section.

## V.      BANKRUPTCY PROCEEDINGS

The Court further notes that Defendant appears to raise a claim of impecunity.  The Court rejects Campbell's attempted claim of impecunity.  The Court further notes that its purpose in entering this order is only to determine the appropriate amount of sanctions.  Campbell's impecunity is the subject of the bankruptcy court, who will determine whether assets are available to pay the amount owed to Radiance.

However, the law on an inability to pay defense is clear. The party seeking the contempt citation retains the ultimate burden of proof, but once a *prima facie* case is made, the burden of production shifts to the alleged contemnor, who must then come forward with evidence to show a present inability to comply that goes "beyond a mere assertion of inability and satisf[ies] his burden of production on the point by introducing evidence in support of his claim." *Combs v. Ryan's Coal Co., Inc.*, 785 F.2d 970, 984 (11th Cir. 1986); *see also S.E.C. v. Solow*, 682 F. Supp. 2d 1312, 1325 (S.D. Fla. 2010), *aff'd,* 396 F. App'x 635 (11th Cir. 2010) ("once the moving party makes a prima facie showing that the court order was violated, the burden of production shifts to the alleged contemnor to show a "present inability to comply that goes 'beyond a mere assertion of inability....'"). In *Combs*, the Eleventh Circuit held as follows:

Nor was there error in the district court's determination that appellants failed to meet their burden of production. The financial records they submitted were seriously inadequate. The income statements were unverified and based on the representations of Simmons, rather than on independent audits. Asset valuations were found to be significantly understated. Financial records were generally incomplete and did not include current statements or tax returns. It may be that Simmons and Alan's in fact lack the present ability to pay the obligation of Ryan's. But their failure to make all reasonable efforts to demonstrate that fact for the court means they were properly held in contempt.

*Combs*, 785 F.2d at 984. Similarly, in *S.E.C. v. Bilzerian*, 112 F. Supp. 2d 12 (D.D.C. 2000),

*aff'd,* 75 F. App'x 3 (D.C. Cir. 2003) (unpublished), the Court noted as follows:

Bilzerian cannot avoid a finding of contempt merely by showing that he is unable to pay the entire $62 million judgment at this time. Inability to comply is only a complete defense if he cannot pay any of the judgment; otherwise, he must pay what he can. *See SEC v. Musella,* 818 F.Supp. 600, 602 (S.D.N.Y.1993). *See also Loftus,* 8 F.Supp.2d at 468 ("[U]nless a party is completely unable to comply with the Court's Order's [*sic* ] due to poverty, he must comply to the extent that his finances allow him.").

*Bilzerian*, 112 F. Supp. 2d at 17. Campbell's financial affidavit filed with the Court (Doc. 111), lacks any corroborating documentation, and is thus insufficient to demonstrate to this Court that he has an inability to pay a compensatory contempt fine. Additionally, in his documents filed in response to the contempt motion, Campbell filed a personal financial statement as of August 21, 2022 which lists assets and companies with assets that are omitted from his financial affidavit filed with the Court. *See* Doc. 102-27.

In this case, Campbell filed for Chapter 7 Bankruptcy and currently has an active bankruptcy case. The only reason the Court is ruling on the instant motion is because the bankruptcy court lifted the mandatory stay so that this Court could determine the monetary amount—if any—owed to Radiance by Campbell. Given that Campbell is in bankruptcy, this Court does not believe that it had the authority to impose a deadline for payment or otherwise threaten further contempt, as the distribution of Campbell's assets is for the bankruptcy court to

determine.   Given this unique procedural posture, the Court determines only the appropriate amount of sanctions owed to Radiance.  The Court will also proceed with briefing on an attorney fee award determination.   However, as discussed previously, the parties shall be instructed to address the jurisdictional interplay between the limited lift of the bankruptcy stay and whether: (1) attorneys' fees would be encompassed in that matter and to what extent – i.e. the undersigned would only likely have the authority to review the attorneys' fees specifically incurred here and not those related to the adversarial bankruptcy proceeding and (2) whether this Court even has the authority to address attorneys' fees and costs under the limited lifting of the bankruptcy stay.

Unless otherwise indicated by the Bankruptcy Court, this Court intends to enter this as a final order and refer the issue back to the Bankruptcy Court for further enforcement in accordance with the bankruptcy stay and other bankruptcy law as it relates to the order of distribution of assets.

## VI.    CONCLUSION

Given Campbell's failure to comply with this Court's Charging Orders, it is **ORDERED** as follows:

(1) Radiance's motion for sanctions (Doc. 65) is **GRANTED**;

(2) Campbell is held in civil contempt of court for his disregard of the charging orders;

(3) Campbell shall purge himself of contempt by paying Radiance $323,089.00, and such additional interest as has accrued from the date of March 25, 2026, to the date of his purge; and

(4) This matter is sent back to the bankruptcy case (23-35668) in the Southern District of New York for any further enforcement and payment of the sanctions award.

Radiance shall file its application for attorneys' fees and costs with jurisdictional analysis and the appropriate supporting documentation by **May 5, 2026**.  Defendant Campbell shall have until **May 12, 2026** to file any response to the application for attorneys' fees and costs.

Finally, Plaintiff's motion to strike the financial affidavit (Doc. 109) is **DENIED as moot** and Defendant's motion to file an objection to the proposed order and supplement (Docs. 115, 116) are **GRANTED in part** and **DENIED in part**.  The Defendant's motion is granted to the extent the Court considered it, but otherwise denied.

The Clerk of Court is **DIRECTED** to provide a copy of this Memorandum Opinion and Order to the United States Bankruptcy Court for the Southern District of New York for case number 23-35668.

**DONE** and **ORDERED** this 28th day of April, 2026.

/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES DISTRICT JUDGE